Thornton Davidson, Esq., SBN 166487
THORNTON DAVIDSON, P.C.
1195 West Shaw Ave, Suite A
Fresno, California 93711
Tel: (559) 476-5064
Fax: (559) 421-0368
E-mail: thornton@thorntondavidsonlaw.com

Attorneys for Plaintiff MAHESH GOGRI

# UNITED STATES DISTRICT COURT

# FOR THE NORTHERN DISTRICT OF CALIFORNIA

* * * * *

| | |
|---|---|
| MAHESH GOGRI,<br><br>        Plaintiff,<br><br>vs.<br><br>KARAN GOGRI, an individual, SHILPA GOGRI, an individual, RENE GRADY, an individual, SANJIV PATEL, an individual, JOHN DOE NUMBERS 1-5, individuals, and JOHN DOE NUMBERS 6-10, entities,<br><br>        Defendants. | Case No.: 24-cv-00732-TLT<br><br>**PLAINTIFF MAHESH GOGRI'S FIRST AMENDED COMPLAINT UNDER FEDERAL RACKETEER INFLUENCED AND CORRUPT ORGANIZATION ACT (18 U.S.C. §1964(C)): VIOLATION OF 18 U.S.C. §§ 1962(a), (b), (c), AND (d)**<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiff MAHESH GOGRI ("Mahesh" or "Plaintiff") submits this Complaint for civil violations of the Federal Racketeer Influenced and Corrupt Organization Act (18 U.S.C. §1964(c)) ("RICO"), against Defendants KARAN GOGRI ("Karan"), an individual, SHILPA GOGRI ("Shilpa"), an individual, RENE GRADY ("Grady"), an individual, SANJIV PATEL ("Patel"), an individual, as follows:

Federal RICO Action

1

## I.    NATURE OF THE CASE

1.    Mahesh and Shilpa are a long-term married couple in the midst of an acrimonious divorce in Alameda Superior Court, In Re: Marriage of Gogri, Case No. HF21118124.  Karan is their adult son.  Prior to and following the demise of the marriage, Shilpa and Karan devised a racketeering enterprise to damage Mahesh, various real estate lenders, title companies, and title insurers, by engaging in a series of schemes involving forged signatures, fraudulent notarization, a phony "gift" letter, restaurant franchise transfer agreement, impersonation, identity theft, and manipulation of corporate documents filed with the California Secretary of State.

2.    To achieve the goal of their racketeering enterprise of damaging Mahesh and the lenders and other entities, Shilpa and Mahesh conspired with Grady, a California licensed notary, and Patel, a former partner of Mahesh, to participate in the schemes for their own financial gain.  By virtue of their ongoing racketeering enterprise, Shilpa and Karan obtained $8M-$9M in loan proceeds and assets owned by Mahesh and did significant damage to the lenders, title companies, and title insurers.

3.    This conspiracy involved multiple schemes to embezzle real estate assets and franchise interests, forge real estate documents, and steal millions of dollars.  Shilpa and Karan utilized the services of co-conspirator Grady, a licensed California public notary, to forge Mahesh's name to over 20 individual real estate documents, which included the theft of Mahesh's personal identifying information.  Shilpa and Karan also conspired with Patel through an entity owned by him and Mahesh, PG14, LLC, to steal over $1M from Mahesh through the fraudulent modification of documents filed with the California Secretary of State that laid the groundwork for the encumbrance of property owned by PG14.

4.    Mahesh was not the only victim of the Defendants' conspiracy.  Shilpa. Karan and Grady also conspired to harm several non-institutional (so-called "hard money") lenders, title companies, and trustees, including SDC Capital, LLC, FCI Lender Services, Lawyers Title Company, Lawrence Marion, Fidelity National Title Company, Inc., and Del Toro Loan Servicing.  The fraudulent scheme to harm these parties was to borrow monies secured against

community property by forging Mahesh's signatures on deeds of trust. Upon discovery of this scheme Mahesh filed a lawsuit against these parties, <u>Gogri v. SDC et al.</u>, Alameda Superior Court Case No. 23CV046119, to declare the deeds of trust void as a matter of law and to quiet title to remove the fraudulent deeds of trust. As a result of the unenforceability of the deeds, the lenders, the transactions' title policy issuers, and the trustees, will be deprived of the security interests which are their primary protection to ensure repayment of the loans. Many of these loans are now in default without the available remedy to the lenders of non-judicial foreclosure given the fraudulent nature of the deeds of trust.

5. Shilpa and Karan used the fraudulently obtained proceeds through their criminal enterprise to buy out Patel from Black Bear Diner franchises ("BBD") in El Cajon and San Rafael, wherein Patel was a knowing and willing co-conspirator in the fraud. The loan proceeds were also used to support JITB and other franchise locations which needed capital for improvement and/or were losing money, as well as to open additional restaurant franchises in McKinleyville, Eureka, Vista, Oceanside, La Mesa, El Cajon, San Diego, California. There is a continuing threat in that Defendants' enterprise has existed since 2019 (perhaps earlier) and continues to this day with investment into more real estate and restaurant businesses in which Mahesh should have an interest but for the fraudulent conduct.

6. This conduct constitutes criminal profiteering activity and a criminal enterprise within the meaning of RICO in that one or more persons engaged in a pattern of criminal activity which involved interstate commerce through mail and wire fraud in violation of 18 U.S.C. §§ 1341 and 1343. Specifically, many of the deeds of trust, grant deeds, and franchise licenses involved use of out-of-state wire transfers, use of the mail, and use of internet and electronic platforms within different states.

## II.    PARTIES AND JURISDICTION

7. Plaintiff Mahesh Gogri is an adult male residing in Fremont, California.

8. Defendant Shilpa Gogri is an individual residing in Fremont, California.

9. Defendant Karan Gogri is an individual residing in San Diego, California, but also with Shilpa at her home in Fremont.

10. Defendant Rene Grady is a resident of California who at all times relevant to this Complaint served as a notary for all the fraudulent real estate transactions and was a co-conspirator with Shilpa and Karan in the illegal acts alleged herein. At the time of the fraudulent transactions, Grady was licensed through the State of California as a Notary Public, Commission # 2254935.

11. Plaintiff alleges that each Defendant was acting as an agent, representative, co-conspirator, and criminal partner, of every other Defendant in doing all the acts described in this Complaint and at all times was acting within the course and scope of such agency, representative capacity, conspiracy, and criminal acts, in doing the acts described herein.

12. The true names and capacities of Defendants named as JOHN DOES 1-10, inclusive, whether individual, corporate, associate, or otherwise, are presently unknown to Plaintiff, who sues such Defendants by fictitious names, and will seek leave of court to further amend this Complaint to set forth the true names and capacities of such DOE Defendants when established. Plaintiff alleges upon information and belief that each DOE Defendant is obligated to Plaintiff in some manner and/or capacity for the claims and obligations set forth in this Complaint. Unless otherwise specified, a reference to "each Defendant" or "Defendants" shall be deemed to include each and every Defendant named in this Complaint, including all DOE Defendants.

13. Any allegation about acts of any corporate or other legal entity which are Defendants means that such Defendant did the acts alleged through its officers, directors, employees, agents and/or representatives while they were acting within the actual or ostensible scope of their authority.

14. At all relevant times, each Defendant named herein committed the acts, caused, or directed others to commit the acts, or permitted others to commit the acts alleged in this Complaint.

15. At all relevant times, each Defendant knew or realized that the other Defendants were engaging in or planned to engage in the violations of the law alleged in this Complaint. Knowing or realizing that Defendants were engaging in or planning to engage in unlawful acts, each Defendant

Federal RICO Action

4

nevertheless facilitated the commission of these unlawful acts by participating in the pattern of racketeering and criminal enterprise referenced herein. Each Defendant intended to and did encourage, facilitate, and/or assist in the commission of the unlawful acts, and thereby aided and abetted the other Defendants in these unlawful acts. Each Defendant encouraged, authorized, approved, accepted and/or ratified the statements, concealments and acts of each of the other Defendants, and accepted and profited from the benefits of such statements, concealments, and acts.

16.    At all relevant times, Defendants have engaged in a conspiracy, common enterprise, and common course of conduct, the purpose of which was to engage in the violations of the law alleged in this Complaint. The conspiracy, common enterprise, and common course of conduct continues to the present.

### III.    JURISDICTION AND VENUE

17.    This Court has original subject-matter jurisdiction pursuant to 18 U.S.C. § 1964(c) and 28 U.S.C. § 1331 because this action arises under the Federal Racketeer Influenced and Corrupt Organizations Act.

18.    This Court has personal jurisdiction over Defendants Shilpa, Karan, Grady, and Patel, because the criminal enterprise was coordinated out of Shilpa's home office in Fremont, many of the notarizations occurred in Northern California, and a significant amount of the real estate involved in the criminal and fraudulent conduct is located in the geographic area covered by the Northern District of California.  Additionally, Shilpa, Karan, and Grady all reside fully or frequently within the same geographic area.

19.    This Court further has personal jurisdiction over Patel and Karan under 28 U.S.C. §1965(b) because in any action brought pursuant to RICO in a U.S. District Court, that Court may cause parties residing in another district to be summoned to that district if the "ends of justice require" it.  Given these facts, and that no other district has personal jurisdiction over all Defendants, the ends of justice require this Court's exercise of personal jurisdiction over any Defendant residing outside the aforesaid geographic area.

20.     Venue is proper in this District pursuant to 28 U.S.C. §1391(b)(2) because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred within this judicial district.  Venue is further proper in this District pursuant to 18 U.S.C. § 1965(a) because each defendant is found, and/or transacts affairs, in this District given each Defendant's participation in the criminal enterprise, as alleged above.

## IV.    GENERAL ALLEGATIONS

21.     Mahesh and Shilpa Gogri were married on August 25, 1985. They are presently 61 and 57 years of age, respectively. They have a 33-year-old son Karan Gogri and a 29-year-old daughter Nidhi Gogri who is not directly involved in this litigation.

22.     Mahesh communicated his desire to divorce Shilpa January 2021 and they officially separated on December 6, 2021.

23.     During the term of their marriage Mahesh and Shilpa purchased and operated restaurant franchises, including the JITB.  They also owned numerous parcels of real property, both residential and commercial. Prior to the racketeering actions detailed herein, they owned 10 restaurants and over 25 parcels of real property.

### Scheme No. 1 (Real Estate Fraud)

24.     Beginning in March 2019, Shilpa and Karan initiated a scheme to obtain over $4 million in cash by borrowing against the substantial real property holdings that were community property belonging to Shilpa and Mahesh. They created their scheme to avoid obtaining the required consent from Mahesh, knowing that he would not approve. They planned to use the funds for operation and expansion of the restaurant business as well as to make other investments.

25.     To implement their scheme, Shilpa and Karan bribed notary Rene Grady to violate her legal obligations and fraudulently notarize real estate documents. These documents included forged signatures of Mahesh by Shilpa, missing thumbprints, and forged thumbprints.  Grady's Notary Journal fails to describe the majority of the notarized documents and includes over 20 signatures and thumbprints which are forgeries made by Shilpa and Karan.  Soliciting a notary to perform improper acts is a violation of California Government Code section 8225.

Federal RICO Action

6

26.    Between March 2, 2019, and March 31, 2021, Shilpa, Karan, and Grady willfully conspired to forge Mahesh's name to six deeds of trust, two grant deeds, a Power of Attorney for Real Estate Transactions ("Scheme No. 1"), as follows:

| Date | Document | Address | Amount |
|------|----------|---------|--------|
| March 2, 2019 | Deed of Trust | [Unknown] | [unknown] |
| March 29, 2019 | Deed of Trust | 6920 Riverland Dr., #10, Redding | $600,000 |
| March 31, 2019 | POA | all real estate transaction | Unknown |
| April 11, 2019 | Deed of Trust | 74-76 Union St., San Jose | $679,000 |
| April 17, 2019 | Deed of Trust | 2304 A Street, Eureka | $250,000 |
| May 31, 2019 | Grant Deed | 975 9th St., Crescent City | $300,000 |
| August 25, 2019 | Deed of Trust | 155 N. Old Hill Rd., Fallbrook | $626,250 |
| November 12, 2019 | Deed of Trust | 1388 Alamo Dr., Vacaville | $225,000 |
| October 1, 2020 | Grant Deed | 500 Harding St., Crescent City | $151,250 (Est.) |

The mortgage fraud scheme transferred over $4 million in equity in the properties, half of which belonged to Mahesh.

27.    To investigate the suspected fraud, Mahesh hired Patricia Fischer of Fischer Forensic (San Ramon, CA) to perform two handwriting analyses on April 23, 2023, and September 18, 2023.

a.    The April 23, 2023, analysis examined 25 signatures by Mahesh in Grady's Notary Journals which included several of the aforementioned Deeds of Trust, a fraudulent Gift Letter transferring restaurant ownership, and the Minutes of the Annual Meeting. Comparing the signatures to known signatures of Mahesh, Ms. Fischer determined that 22 of the signatures, multiples of the initials, and numerous of the dates, were forgeries in which Shilpa was the most likely forger. A copy of Ms. Fischer's April 23, 2023, Opinion is attached hereto as Exhibit A.

b.    The September 18, 2023, analysis examined Grady's Notary Journals between November 29, 2017, and August 15, 2019, determined that 12 forgeries of Mahesh's signature for which his right thumbprint was missing and 10 forgeries which included the thumbprint. There were only 3 confirmed signatures by Mahesh, all of which included his thumbprint. A copy of Ms. Fischer's September 18, 2023, Opinion is attached hereto as Exhibit B.

Federal RICO Action

7

DocuSign Envelope ID: BA6B3Z9B-9A30-445C-9FFE-13940FG3D85B

28. On September 19, 2023, Kurt Kuhn of Forensic Consulting Service (Fullerton, CA) performed an analysis of the thumbprints in Grady's Notary Journals, which included numerous thumbprints by Mahesh, Shilpa, and Karan. Mr. Kuhn determined that only 3 of the thumbprints were Mahesh's and 8 were made by another person. Mr. Kuhn determined that one of Mahesh's fraudulent thumbprints, on an August 15, 2019, Deed for 155 Old Hill Rd., in Fallbrook, California, was Karan's right thumbprint. On information and belief, the other 7 are alleged to be Shilpa's left thumb. A copy of Mr. Kuhn's Report is attached hereto as Exhibit C.

29. In each of the enumerated real estate transactions in which Defendants committed acts of forgery and fraud between March 2, 2019 and October 1, 2020, they committed indictable acts of mail fraud and wire fraud. Such instances included but were not limited to use of the wire, internet, and mail to negotiate fraudulent loans, execute deeds of trust and other documents, and close escrows on: a) March 2-6, 2019, between Defendants, Evergreen Capital Funding, and First American Title, regarding 404 Miwok, Fremont, California; b) March 28-29, 2019 between Defendants, SDC Capital, LLC, and Fidelity Title regarding 6920 Riverland Dr., #10, Redding, California; c) April 16-17, 2019, between Defendants, SDC Capital, LLC, and Lawyers Title Company regarding 2304 A Street, Eureka, California; and d) November 9-12, 2019 between Defendants, Lawrence Marion, and Fidelity Title regarding 1388 Alamo Dr., Vacaville, California, among other dates. Defendant Grady utilized emails and mail when she forwarded the deeds of trust to the subject title companies.

30. In filing false mortgage loan documents, Defendants' criminal enterprise also victimized the lenders, title insurance companies, and trustees involved in the transactions. The lenders and trustees received false applications and did not receive valid deeds of trust as security for the loans. The title insurance companies are now responsible for defending the lenders and trustees arising from the void deeds of trust. The entities defrauded by Defendants' enterprise thus far include SDC Capital, LLC, FCI Lender Services, Lawyers Title Company, Lawrence Marion, Fidelity National Title Company, Inc., and Del Toro Loan Servicing. These entities were involved in lending and insuring title for community properties in Eureka, Redding, and Vacaville.

Federal RICO Action

8

31.    Mahesh filed a Declaratory Relief Action, Gogri v. SDC Capital, LLC, Alameda County Superior Court Case No. 23CV046119, to have the deeds of trust declared null and void, leaving the lenders without their security and title insurers to expend monies to defend the title defects. Given that the title companies must now defend the lenders against title claims and Mahesh is obligated to incur legal fees to preserve his interest in the properties, Shilpa and Karan's criminal enterprise continues to cause significant economic harm.

32.    In order to achieve Scheme No. 1, Shilpa, Karan, and Grady used mail, electronic wires, and electronic media to receive monies, record grant deeds and deeds of trust, and communicate with the lenders and title companies.

### Scheme No. 2 (Theft of Franchise Interests)

33.    After Shilpa learned that Mahesh intended to file for divorce in early 2021, she and Karan conspired to transfer Mahesh's interest in the JITB to Karan, all without Mahesh's knowledge or consent. The illegal transfer of the JITB was accomplished through a forged "Gift Letter," dated March 31, 2021, forged Minutes of the Annual Meeting of Directors of Gogris Inc., Indmex, Inc., Gogris J447, Inc., Gogris J4366 Inc., and Gogris J424, Inc., as well as an Agreement and Consent form DocuSigned by Shilpa for Mahesh without his knowledge or consent. A copy of the forged Gift Letter, the manipulated Corporate Documents, and the forged DocuSign document are attached hereto as Exhibits D, E, and F, sequentially.

34.    The 10 JITB Franchises were owned by 10 different legal entities as follows:

a.    On or around March 31, 2021, Shilpa, along with Karan, effectuated the transfer of Mahesh's ownership interest in several of the parties' community property franchise interests in JITB to Karan, including the following restaurant Location Nos.: 409, 429, 462, 531, 551, 447, 424, 4366, 4317, and 4327.

b.    On or around 6/21/2021, Shilpa along with Karan, effectuated:

i.    The gifting of all of Mahesh's shares in the community properties Gogris Corporation and Indmex Corporation to Karan.

ii.    The gifting of a portion of Shilpa's community shares in the Gogris

Corporation and Indmex Corporation to Karan;

iii. Transferred the JIB Location No. 424 from Gogris Corporation to Gogris J424 Corporation, the JIB Location No. 447 from Gogris Corporation to Gogris J447 Corporation, and JIB Location No. 4366 from Gogris Corporation to Gogris J4366 Corporation;

iv. Approved Karan as the new operator of the JIB Location Nos. 424, 4366, and all Indmex restaurants.  This was accomplished by way of an "Ownership Change Agreement" dated June 21, 2021, without Mahesh's knowledge or consent.

35.    In order to complete the theft of Mahesh's ownership interest in the JITB companies, Karan filed a Complaint for Declaratory Relief against Mahesh and Shilpa, Gogri v. Gogri et al., Alameda Superior Court Case No. 22CV023043.  He did so in an attempt to insulate himself and Shilpa from Mahesh's claim that the transfer of the JITB was part of a criminal enterprise.

36.    To hide their efforts from Mahesh, Shilpa and Karan caused the Complaint against Mahesh to be served on Karan on December 6, 2022, and to cause a fraudulent proof of service to be filed with the Court attesting to the service.  Karan subsequently made a sham "settlement" with Shilpa to make the litigation appear legitimate.

37.    In the fraudulent transfer of Mahesh's interest in the five entities which owned the 10 JITB, namely Gogris Corporation, Gogris J424, Gogris J447, Gogris J4366, and Indmex Corporation, Shilpa and Karan committed acts of forgery on March 31, 2021, when Mahesh was removed from his management role with the entities.

38.    Shilpa and Karan also committed wire fraud in pursuing this scheme. They executed a DocuSign "Ownership Change Agreement," dated June 21, 2021, between Shilpa, Karan, and Different Rules, LLC, a Delaware Corporation.  Shilpa and Karan also accessed the California Secretary of State website on August 17, 2022, to remove Mahesh as a Director of the

five companies that were being fraudulently transferred: Gogris Corporation, Gogris J424 Corp., Gogris J4366, Gogris J447, and Indmex Corporation. Copies of the modified corporate documents are attached hereto as Exhibit E.

39.    The value of Mahesh's converted stock holdings is estimated to be $4 million.

<u>Scheme No. 3 (Theft of PG14, LLC)</u>

40.    Shilpa, along with Karan, effectuated the fraudulent transfer of Mahesh's ownership interest in several of the community property entities both prior to separation and while the dissolution was pending. These include but are not limited to the following transfers:

a.    In 2015 Mahesh and Shilpa formed PG14, LLC during the marriage; it was originally held by Mahesh and Defendant Patel as the only members. PG14, LLC holds the community real property located at 1025 Fletcher Parkway, El Cajon, CA 92020 ("Fletcher Property"). On or around December 29, 2022, approximately one year after the commencement of this dissolution proceeding, Karan unilaterally filed a "Statement of Information" with the California Secretary of State reflecting his unilateral appointment of himself as the CEO of PG14, LLC and removing Sanjiv Patel as a member and registered agent, leaving he and Mahesh as the sole members of the LLC. This was without Mahesh's knowledge or consent, and without any required documents that reflected *any* buy-sell agreement of interests, changes to operating agreements or articles of organization, or any executed documents by the members would purport that this change had received consent.  On that same day, December 29, 2022, Karan filed a second "Statement of Information" with the California Secretary of State removing Mahesh as a member of the LLC. This again was without Mahesh's knowledge or consent.

b.    On January 5, 2023, Karan filed an Amendment to the Articles of Organization of PG14, LLC, marking the entity as "Manager-managed" and

<u>Federal RICO Action</u>

11

named himself as the sole Manager. This again was without Mahesh's knowledge or consent.

    c.    On January 5, 2023, PG14, LLC recorded the encumbrance of the Fletcher Property with a loan in the amount of $2,420,000.00, of which Deed of Trust was executed by Karan as the Managing Member of PG14, LLC. This action by Karan was without Mahesh's consent.

41.    In the fraudulent transfer of Mahesh's interest in PG14, LLC, Defendants Shilpa, Karan, and Patel utilized mail, wire, and the internet fraud to remove Mahesh as the CEO of PG14 and then borrowed $2.42M against the property, none of which was used for Mahesh's benefit. The loan encumbered PG14's sole asset, which is 1025 Fletcher Parkway, El Cajon, CA 92020. To accomplish this fraudulent scheme Karan used the Internet to manipulate corporate documents listed with the California Secretary of State and also the Articles of Organization in which he named himself as the sole Manager. The loan proceeds that drew down the community equity in the property were hidden from Mahesh and not used for his benefit. The lending process utilized wire, mail, and multiple internet forums/platforms to facilitate the loan.

Scheme No. 4 – (Fraudulent Commercial Lease)

42.    Just five months ago, on September 1, 2023, Shilpa entered into a fraudulent lease for commercial property located at 19600 Hesperian Blvd., Hayward, California. The property, owned by Mahesh and Shilpa, had been vacant but is a valuable asset which could have been sold or developed for a national restaurant franchise. Instead, Shilpa entered into a fraudulent lease with tenants in the name of Shilpex, LLC, a defunct California entity that she once owned with Mahesh. At the time she entered into this lease Shilpex had no interest in the property. Shilpa entered into a long-term lease at a below-market rent without Mahesh's knowledge or consent. Shilpa then converted the security deposit and has been collecting rent to contribute further investment funds used by her and Karan.

43.    Critical to Shilpa's scheme was her failure to disclose the lease until it was discovered by Mahesh upon driving by the location and seeing the tenants preparing to open their

Federal RICO Action

12

restaurant. Once the unlawful lease was discovered, Mahesh alerted his attorney who objected to Shilpa's attorneys and advised that the lease be terminated as having been illegally formed involving an entity without any interest in the property.

44. Despite Mahesh's objection to the lease, including written notice to the tenants, Shilpa has continued to convert the lease proceeds and refused to share with Mahesh his rightful interest. Additionally, Shilpa has reduced the market value of the property by entering into a long-term, below-market lease. Thus, by underutilizing the asset's value and converting the lease deposit and payments, Shilpa ensured that Mahesh was significantly and materially damaged.

45. This most recent act of fraud by Shilpa confirms there can be no doubt that fraudulent business activities have become a regular way of doing business for her criminal enterprise with Karan.

## V. LITIGATION HISTORY AND JURISDICTIONAL ISSUES

46. On December 13, 2021, Mahesh filed for divorce from Shilpa in Alameda County Superior Court case number HF21l18124.

47. Unbeknownst to Mahesh, Karan and Shilpa conspired to have a separate civil court affirm their theft of Mahesh's interest in the JITB and PG14. On December 2, 2022, Karan secretly filed a lawsuit against both Shilpa and Mahesh, though the claims against his mother were a ruse to make the litigation appear legitimate, Karan Gogri v. Mahesh Gogri et al., Alameda County Superior Court Case No. 22CV023043. The lawsuit was fraudulently served on a day when Mahesh was miles away from his home; on information and belief Mahesh contends that Karan impersonated for the purposes of the fraudulent service. Notably, Shilpa used a law firm different that her family law counsel in an effort to hide that she and Karan were inferring with community assets. Karan and Shilpa then reached a pre-arranged "settlement" on March 16, 2023, in which Karan received half of Shilpa's interest in the JITB, giving him 75% of the total investment. All of this was accomplished prior to Mahesh becoming aware of the lawsuit, which was part of Karan's and Shilpa's scheme.

Federal RICO Action

13

48.    In his civil complaint Karan states that during the divorce proceedings Mahesh questioned Karan's ownership in the entities owning the 10 JITB restaurants and the two Black Bear Diner restaurants. He stated that he needed declaratory relief because he was not a party to the divorce proceedings. Karan argued that he had lawfully received a transfer of all of Mahesh's ownership in the restaurants and a portion of Shilpa's ownership interests. He specifically asked the court to declare that he is the sole owner of Indmex Corporation, Gogris 1424, Inc., and Gogris 14366 Inc.; owned or otherwise controls 75% of the shares of Gogris Corporation; owned or otherwise controlled 75% of the shares of Gogris J447, Inc.; and owned 50% of the shares in Goldenorth Restaurants, Inc. The civil lawsuit has one cause of action for declaratory relief.

49.    In April 2023, present counsel replaced Mahesh's prior attorneys and immediately filed a cross-complaint with causes of action against Karan for fraud and conversion, causes of action against Shilpa for breach of fiduciary duty and fraud, and requests for an accounting and declaratory relief.

50.    Simultaneously, Mahesh's counsel immediately sought to have the civil action consolidated with the family court proceeding on the grounds that the civil case was an improper invasion of the jurisdiction of the family court. Karan vigorously opposed both joinder and consolidation. In his Opposition to consolidation, Karan stated, "the civil action concerns only Karan's share of the Holding Companies, which were either never part of the community or which exited the community prior to the initiation of the dissolution proceedings." (Opposition, p. 9:14-16.)

51.    On August 30, 2023, family court Judge Peter Borkon rejected consolidation of the civil case on the basis that it would be "unfeasible for the Family Law Court to conduct a jury trial, which although not yet requested is among the rights of the parties to the Civil Action." This rejection was twice reaffirmed by Shilpa's and Mahesh's initial private judge (approved by the Family Law Court), Roger Lewis, when he rejected Mahesh's and Shilpa's stipulation to move the Cross-Complaint against her in Karan's action into the Family Law forum and also by the parties'

new private Judge Trent Lewis who stated that Karan's case would not be joined into the Family Law case without Karan's stipulation, which Karan has refused to provide.

52. Now that three family court judges have refused to consolidate Karan's civil action with the family court action, all of the issues with the greatest financial consequences for the parties will be decided in the civil action. The civil court action is completely distinct from the family court case, and Defendants are estopped from arguing otherwise after consistently fighting to keep the cases separate.

53. Given this separation of the cases, there should be no reason for the Court to stay this case based upon a "domestic relations" abstention. To the extent there is overlap, the instant RICO case has much more in common with the civil case than what is left of the family court case. Plaintiff is not seeking a modification of an existing divorce decree nor to advance the family court action toward a divorce decree. Plaintiff does not seek interim relief. Plaintiff only pleads for economic damages as provided by the RICO statute.

54. In *DeMauro v. DeMauro* (1st Cir. 1997) 115 F.3d 94 the First Circuit addressed a RICO case filed by an aggrieved wife who was similarly pursuing her husband for alleged fraudulent handling of assets. While stating that interference with the family court could be a plausible basis for abstention, the court remanded the case and further stated,

> While abstention may be permissible, it cannot be automatic in a case of this kind…In making such an appraisal, the district court is free to consider the plausibility of this civil RICO claim as a freestanding cause of action, the actual threat in this case for conflict between such a suit and the pending state divorce action, any threat of immediate harm associated with alleged ongoing civil RICO violations, and other consequences or concerns that make it equitably reasonable to accelerate or to defer consideration of federal relief.

55. Now that the family law court has repeatedly refused to accept the most significant civil law claims, the "threat… for conflict between the [RICO claim] and the pending state divorce action" is de minimis here. This Federal action should proceed in parallel to the state court civil action, pursuant to *Ernest Bock, LLC v. Steelman* (9th Cir. 2023) 76 F.4th 827: the state civil action cannot completely settle the issues presented in this RICO Complaint. If the state court

Federal RICO Action

15

finds that the alleged transfers to Karan were fraudulent, then it would *not* be empowered to completely resolve the RICO allegations. Under *Bock,* this calls for parallel actions. The Supreme Court has clearly stated, "We have never viewed parallel in personam actions as interfering with the jurisdiction of either court." (*Vendo Co. v. Lektro-Vend Corp.* (1977) 433 U.S. 623, 642.)

VI.    CLAIMS FOR RELIEF

**First Claim for Relief**

(RICO 18 U.S.C. §1964)

56.    Plaintiff incorporates by reference all preceding paragraphs of this Complaint as though fully set forth herein.

57.    Mahesh alleges that Defendants' conduct, and the conduct of each Defendant named herein, constitutes racketeering as set forth in 18 U.S.C. § 1962. Specifically, Congress has defined "racketeering" to include persons investing income in any enterprise derived from a pattern of racketeering activity (subd. (a)), using a pattern of racketeering activity to acquire or maintain control over an enterprise (subd. (b)), conducting the affairs of an enterprise through a pattern of racketeering (subd. (c)), and conspiring to violate subdivision (a), (b), and (c) (subd. d). Defendants' racketeering activity involved mail and wire fraud, primarily through the real estate transactions and those involving JITB. Defendants are liable under each of these four sections of the statute.

58.    18 U.S.C. § 1964(c) allows "any person injured in his business or property by reason of a violation of section 1962 of this chapter" to "sue therefor in any appropriate United States district court and shall recover threefold the damages he sustains and the cost of the suit, including a reasonable attorney's fee…"

59.    Defendants used wires, the mail, and other electronic means for the receipt of monies withdrawn of properties and assets owned by Mahesh, including but not limited to transfers of ownership, recording of deeds of trust, entity transfers, real estate borrowing, as more fully described herein.

Federal RICO Action

16

<u>Count One: Violation of 18 U.S.C. §1962(c)</u>

(Against Shilpa Gogri and Karan Gogri)

60.    Plaintiff incorporates by reference all preceding paragraphs of this Complaint as though fully set forth herein.

61.    U.S.C. § 1962(c) makes it "unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity..."

62.    Defendants violated RICO and Plaintiff was injured as a result. Each Defendant is a "person" capable of holding legal or beneficial interest in property within the meaning of 18 U.S.C. § 1961(3). Each Defendant violated 18 U.S.C. § 1962(c) by the acts described in the prior paragraphs, and as further described below.

63.    **The Enterprise**. As specifically relevant to 18 U.S.C. §1962(c), Defendants Shilpa, Karan, and Grady formed an association-in-fact racketeering enterprise consistent with the meaning of 18 U.S.C. § 1961(4). Their enterprise has the common and continuing purpose to commit crimes and civil offenses to both steal Mahesh's share of the family restaurant and real estate businesses, and to obtain financing for operation and expansion of those legitimate businesses without legal restraint. Shilpa and Karan relate to each other in the enterprise as partners who also share the family bond of mother and son; in the legitimate business Karan is the CEO and CFO and Shilpa holds the position of Secretary, functioning in a support role.  The racketeering enterprise has existed for at least five years since the first fraud scheme was planned in 2019. This has been sufficient time for the enterprise to implement multiple racketeering schemes - as detailed above - and it is likely to continue operating indefinitely.  Grady was critical to the enterprise because the real estate documents were required by law to be notarized by a licensed Public Notary.

64.    **Interstate Commerce**. The racketeering enterprise is associated with legitimate restaurants and real estate businesses that engage in interstate commerce.  The restaurants are

franchised by an out-of-state franchise company, serve out-of-state customers, and obtain some of their equipment and food supplies from out-of-state sources.

65.    **Pattern of Racketeering Activity**. Defendants, each of whom are persons associated with the enterprise, did knowingly, willfully and unlawfully conduct or participate, directly or indirectly, in the affairs of the enterprise through a pattern of racketeering activity within the meaning of 18 U.S.C. § 1961(1), 1961(5), and 1962(c). Defendants had the specific intent to engage in the substantive RICO violations alleged herein.

66.    Predicate acts of racketeering activity are acts which are indictable under provisions of the U.S. Code enumerated in 18 U.S.C. § 196l(l)(B), as more specifically alleged below. Defendants each committed at least two such acts.

67.    The acts of racketeering were not isolated, but rather the acts of Defendants were related to each other in that a) they had the same purpose to implement a fraudulent scheme to steal the assets of Mahesh; b) they had the same participants, Karan, Shilpa, and Grady; and c) they had successful results.

68.    The acts of racketeering by Defendants have been continuous: they have implemented four distinct racketeering schemes beginning five years ago, with Shilpa implementing the most recent commercial leasing fraud scheme just five months ago. This highlights the continued threat of further schemes involving both criminal acts and civil offenses. It has become a central way of doing business for their racketeering enterprise.

69.    Plaintiff specifically alleges that Defendants participated in the operation and management of the association-in-fact enterprise by overseeing and coordinating the commission of multiple acts of racketeering as described below.

70.    **Predicate Acts**: Use of Mails and Wires to Defraud Mahesh in Violation of 18 U.S.C. §§ 1341 and 1343. Defendants committed acts constituting indictable offenses under 18 U.S.C. §§ 1341 and 1343 in that they devised schemes to obtain assets and money from Mahesh by means of false or fraudulent pretenses, representations or promises. For the purpose of

executing their schemes, Defendants caused delivery of various documents and things by the U.S. mails or by private or commercial interstate carriers or received such therefrom. Specifically, Defendants engaged in the following acts in pursuit of their schemes:

➤ Shilpa and Karan made cell phone calls to each other and sent text messages to each other in Fremont, California in February and March 2019 to plan the loan fraud scheme.

➤ Shilpa and Karan made phone calls to their lenders and received cell phone calls in Fremont about the terms of the loans.

➤ Shilpa and Karan received email communications in Fremont with loan documents throughout 2019.

➤ Shilpa and Karan emailed financial and property information to the lenders throughout 2019.

➤ Shilpa withdrew money electronically in Fremont CA in March 2019 to pay a bribe to notary Rene Grady, a co-conspirator.

➤ In Fremont, on the nine dates listed in paragraph 27, Shilpa fraudulently signed Mahesh's name to loan documents and solicited Grady to fraudulently notarize those documents.

➤ On August 15, 2019, in Fremont, Karan forged a thumbprint of Mahesh by substituting his own thumbprint on a Deed for 155 Old Hill Rd., in Fallbrook, California.

➤ Both Karan and Shilpa used the Internet-based DocuSign service to sign an "Ownership Change Agreement" in Fremont, California on June 21, 2021, for franchisor Different Rules, LLC (a Delaware Corporation), after Shilpa mailed the fraudulent Gift Letter to Different Rules.

➤ On August 17, 2022, both Karan and Shilpa electronically accessed the California Secretary of State website to fraudulently remove Mahesh as a Director of all five

companies owning the Jack-in the Box franchises: Gogris Corporation, Gogris J424 Corp., Gogris J4366 Corp., Gogris J447 Corp., and Indmex Corporation.

➢ On December 29, 2022, Karan again electronically accessed the California Secretary of State website to unilaterally make changes to the PG14 LLC corporate information. Without knowledge or consent of Mahesh or any corporate formalities, he 1) replaced Sanjiv Patel as a member and registered agent of the LLC with himself; 2) removed Mahesh as a member and changed the form of the LLC to manager-managed; and 3) appointed himself CEO.

➢ Shilpa executed a commercial lease in the name of a defunct limited liability company, without authorization from fellow owner Mahesh; she made cell phone calls and sent emails from Fremont in August 2023 to arrange this lease with the tenants.

71.    **Injuries**. Mahesh was injured as a direct proximate cause of Defendants' actions in the multiple schemes. In Scheme 1 he personally lost an estimated $2 million equity in community real estate properties that was replaced by loan obligations; in Scheme 2 he lost an estimated $4 million in asset value of his stock holdings that were fraudulently transferred to Karan; in Scheme 3 he lost an estimated $1.2 million equity in PG14 that was replaced by loan obligations; and in Scheme 4 he lost an estimated $1M in converted lease payments and reduced property value.

Count Two: Violation of 18 U.S.C. §1962(b)

(Against Shilpa Gogri and Karan Gogri)

72.    Plaintiff incorporates by reference all preceding paragraphs of this Complaint as though fully set forth herein.

73.    18 U.S.C. § 1962(b) makes it "unlawful for any person through a pattern of racketeering activity or through collection of an unlawful debt to acquire or maintain, directly or indirectly, any interest in or control of any enterprise which is engaged in, or the activities of which affect, interstate or foreign commence."

Federal RICO Action

20

74.    Each Defendant, at all relevant times, is and has been a "person" within the meaning of 18 U.S.C. § 1961(3) because each Defendant is capable of holding, and does hold, "a legal or beneficial interest in property."

75.    **Enterprises**.  For the purpose of this USC 1962 (b) claim for relief, the enterprises consist of five California corporations based in Fremont: Gogris Corp., Indmex Corp., Gogris J424 Corp., Gogris J447 Corp., and Gogris J4366 Corp.  Each company was formed to legitimately own and operate restaurants, mostly Jack-in-the-Box fast food restaurant franchises. Control of all five enterprises was transferred to Karan Gogri by means of racketeering activity. Prior to the fraud, the Directors of all companies were Mahesh, Shilpa and Karan; Mahesh was removed as a result of fraudulent conduct. The officers were Karan and Shilpa before and after the fraud. The normal activities of the restaurant companies were acquiring franchises and operating restaurants. The racketeering activities constituted forgery, wire fraud, and mail fraud intended to illegitimately transfer company ownership. The enterprises did not benefit from this racketeering; only Karan Gogri benefited personally.

76.    **Predicate Acts**.  Both Defendants created a scheme to defraud Mahesh by forging documents to transfer his ownership interest in the enterprises to Karan, and also remove him as a Director (Scheme 2 above).   All acts described herein were intentionally performed by Shilpa and Karan. As specified in the incorporated paragraphs 55-59, the predicate acts were related as part of a fraudulent scheme, and they form part of the bigger picture of racketeering activity by the enterprise identified in paragraph 53 that has spawned four separate schemes to date and will continue into the future.

77.    Shilpa created two fraudulent documents in her Fremont home in March 2021: 1) a "Gift Letter" purportedly written and signed by Mahesh that transferred all of his stock holdings in the enterprises to Karan without consideration; and 2) fraudulent Minutes of the Annual Meeting of Directors of Gogris Inc. that was not attended by Mahesh.

Federal RICO Action

21

The following additional acts effectuated the fraudulent acquisition of corporate ownership:

➢ On Tuesday, March 16, 2021, Shilpa made a cell phone call to notary Rene Grady offering her additional money in exchange for her fraudulent notarization of additional documents, pursuant to her participation in the racketeering conspiracy that had begun in 2019.

➢ Shilpa and Karan made cell phone calls to each other and sent text messages to each other in Fremont, California in March 2021 to plan the loan fraud scheme.

➢ Shilpa withdrew money electronically in Fremont CA in March 2021 to pay a bribe to notary Rene Grady, a co-conspirator.

➢ In Fremont, on March 31, 2021, Shilpa fraudulently signed Mahesh's name to the "Gift Letter" and co-conspirator Rene Grady notarized the Gift Letter with full knowledge of its fraudulent nature.

➢ Both Karan and Shilpa used the Internet-based DocuSign service to sign an "Ownership Change Agreement" in Fremont, California on June 21, 2021, for franchisor Different Rules, LLC (a Delaware Corporation), after Shilpa mailed the fraudulent Gift Letter to Different Rules.

➢ On August 17, 2022, both Karan and Shilpa electronically accessed the California Secretary of State website to fraudulently remove Mahesh as a Director of all five companies owning the Jack-in the Box franchises: Gogris Corporation, Gogris J424 Corp., Gogris J4366 Corp., Gogris J447 Corp., and Indmex Corporation.

78.    **Injuries**. As a direct and proximate consequence of the Defendants' actions in violation of section 1962(b), Mahesh suffered the loss of approximately $4 million in assets that were stolen from him by the fraudulent transfer of his shares of stock.

Federal RICO Action

22

79.    Because of Defendants' violations of 18 U.S.C. § 1962(b), Defendants are liable to Plaintiff for three times the damages Plaintiff has sustained, plus the cost of this suit, including reasonable attorneys' fees.

Count Three: Violation of 18 U.S.C. §1962(a)

(Against Shilpa Gogri and Karan Gogri)

80.    Plaintiff incorporates by reference all preceding paragraphs of this Complaint as though fully set forth herein.

81.    18 U.S.C. § 1962(a) makes it "unlawful for any person who has received any income derived, directly or indirectly, from a pattern of racketeering activity . . . to use or invest, directly or indirectly, any part of such income, or the proceeds of such income, in acquisition of any interest in, or the establishment or operation of, any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce."

82.    Each Defendant, at all relevant times, is and has been a "person" within the meaning of 18 U.S.C. § 1961(3) because each Defendant is capable of holding, and does hold, "a legal or beneficial interest in property."

83.    Shilpa and Karan received estimated proceeds of $2 million from Scheme 1, $4 million in asset value of the five companies fraudulently acquired in Scheme 2, and $1.2 million in loan proceeds from Scheme 3.  In total, they received over $10 million in "income derived, directly or indirectly, from a pattern of racketeering activity."72.    In violation of 18 U.S.C. §1962(a), Shilpa and Karan have now reinvested these ill-gotten gains into legitimate business investments and harmed Mahesh in the process. The fraudulently obtained loan funds are being used for several purposes: a) to cover losses from existing businesses, some of which were previously owned by Mahesh; b) to make capital improvements to those businesses; and c) to purchase additional real estate and restaurant franchises throughout California, including JITB in McKinleyville, Eureka, and other locations; Black Bear Diners in Vista, San Diego, and other locations; and Qdoba Mexican Eats in Oceanside, La Mesa, El Cajon, and other locations.

Federal RICO Action

84.    Mahesh has been injured by this reinvestment of cash and assets stolen from him in several ways.  His first injury is from Karan using these "ill-gotten" proceeds to pay for maintenance and repairs of a Black Bear Diner – Karan would normally be responsible to pay for these expenses; instead, he is now using Mahesh's funds to subsidize his business.  His second injury is Karan's and Shilpa's expansion of JITB franchises and Qdoba has foreclosed Mahesh's own ability to expand as an owner. Franchisees are given a preference on locations that become available within a franchise area; opportunities taken by Karan and Shilpa are now not available to Mahesh.  His third injury is that the enormous proceeds from the racketeering acts have created an unlimited fund for Karan and Shilpa to litigate against Mahesh.

85.    Because of Defendants' violations of 18 U.S.C. § 1962(a), Defendants are liable to Plaintiff for three times the damages Plaintiff has sustained, plus the cost of this suit, including reasonable attorneys' fees.

Count Four: Violation of 18 U.S.C. §1962(d)

(Against Shilpa Gogri, Karan Gogri, Rene Grady and Sanjiv Patel)

86.    Plaintiff incorporates by reference all preceding paragraphs of this Complaint as though fully set forth herein.

87.    18 U.S.C. § 1962(d) makes it "unlawful for any person to conspire to violate any of the provisions of subsection (a), (b) or (c) of this section."

88.    As alleged in the preceding sections, each Defendant, at all relevant times, is and has been a "person" within the meaning of 18 U.S.C. § 1961(3).

89.    Shilpa and Karan formed the initial racketeering conspiracy to steal Mahesh's assets and use the borrowing capacity of the real estate to fund rapid expansion of the restaurant and real estate businesses – all without Mahesh's knowledge or consent.  In March 2019 they formed an agreement with Defendant Rene Grady to fraudulently notarize documents for their mortgage loan scheme. Grady knowingly and intentionally agreed to notarize loan documents that contained forgeries of the signature of Mahesh Gogri in return for money.

Federal RICO Action

24

90.    In December 2022, Sanjiv Patel formed an agreement with Shilpa and Karan conspire against Mahesh; he agreed to let Karan Gogri replace him as a Member of the PG14 LLC and he agreed to let Karan remove Mahesh completely from the LLC without informing Mahesh of what the two men were doing.

<u>PRAYER FOR RELIEF</u>

WHEREFORE, Plaintiff prays for judgment against Defendants as follows:

1.    Finding that all Defendants are jointly and severally liable for all damage caused to Plaintiff;

2.    Awarding Plaintiff monetary damages in an amount not less than $8,000,000, said amount to be proven at trial;

3.    Awarding Plaintiff enhanced (treble) monetary damages pursuant to 18 U.S.C. § 1964(c);

4.    Awarding Plaintiff its litigation expenses, including reasonable attorneys' fees, costs, and disbursements;

5.    Awarding Plaintiff punitive damages in the sum of not less than $10,000,000 or an amount otherwise to be decided by a jury; and

6. Granting such other relief as the case may require or as may be deemed proper and equitable. deems just and proper.

DATED:  March 14, 2024

THORNTON DAVIDSON, P.C.

By: Thornton Davidson
Attorney for Plaintiff Mahesh Gogri

Federal RICO Action

25

## V E R I F I C A T I O N

[C.C.P. §§ 446, 2015.5]

STATE OF CALIFORNIA

COUNTY OF ALAMEDA

I, MAHESH GOGRI, am the plaintiff in the above-entitled action. I have read the foregoing Verified Complaint. and know the contents thereof. The same is true of my own knowledge, except as to those matters which are therein alleged on information and belief, and as to those matters, I believe it to be true.

I declare under penalty of perjury under the laws of the State of California and the United States of America that the foregoing is true and correct.

Dated: 3/14/2024

DocuSigned by:

*Mahesh Gogri*

7740OC85D3924E2...

MAHESH GOGRI

··∞··

Federal RICO Action

26