Thornton Davidson, Esq., SBN 166487
THORNTON DAVIDSON, P.C.
1195 West Shaw Ave, Suite A
Fresno, California 93711
Tel: (559) 476-5064
Fax: (559) 421-0368
E-mail: thornton@thorntondavidsonlaw.com

Attorneys for Plaintiff MAHESH GOGRI

# UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

* * * * *

| | |
|---|---|
| MAHESH GOGRI,<br><br>Plaintiff,<br><br>vs.<br><br>KARAN GOGRI, an individual, SHILPA GOGRI, an individual, RENE GRADY, an individual, SANJIV PATEL, an individual, JOHN DOE NUMBERS 1-5, individuals, and JOHN DOE NUMBERS 6-10, entities,<br><br>Defendants. | Case No. 3:24-cv-00732-TLT<br>Related Case No. 3:24-cv-03067-PHK<br><br>**DECLARATION OF PLAINTIFF MAHESH GOGRI'S ATTORNEY THORNTON DAVIDSON IN SUPPORT OF PLAINTIFF'S POSITION RE: JOINT DISCOVERY DISPUTE**<br><br>**Judge:   Trina L. Thompson** |

I, THORNTON DAVIDSON, declare and say:

1.      I am an attorney licensed to practice in all Courts in the State of California, including the District Court for the Northern District of California.  I am the attorney of record for the Plaintiff MAHESH GOGRI in the above-referenced matters.

Gogri's family law counsel, Arlene Koch, and I agreed that Ms. Grady's deposition should be reset in the divorce case, Alameda Superior Court Case No. HF21118124. I had previously moved to consolidate the two Alameda cases, which was vigorously and successfully opposed by Karan's attorney. Thus, opposing counsel was not noticed at Ms. Grady's August 25, 2023 deposition because that deposition was taken in the family court action where Karan had worked so hard to be excluded. That deposition lasted all of 8 minutes after Ms. Koch repeatedly advised Ms. Grady to seek counsel as her testimony could possibly 'affect her notary license'. Her purpose for doing so was not to protect Ms. Grady but ensure Ms. Grady would not impugn her client in fraudulent real estate transactions. Thus, the taking of that derailed deposition is irrelevant to the instant dispute.

8.    Ms. Grady called me around mid-August and wanted to talk about the RICO matter. She then told me that she wanted to 'clear her conscience' as to her notarizations of certain real estate documents forged by Shilpa, some with Karan's knowledge. She volunteered to give me a taped statement, which she did on May 6, 2024. In that statement, which was transcribed by Jamie Onuki, CSR No. 13904, Ms. Grady testified that:

a.    She did not have a lawyer and was willing to appear without being represented. (Depo. of Renee Grady, p. 5, lines 24 – p. 5, line 11 ("DRG 5:24-5:11").)[1]

b.    She appeared voluntarily for the taped statement without being coerced or threatened. (DRG 6:24-7:6; 69:18-25.)

c.    Karan's attorneys called her several times, initially advising her to retain an attorney (DRG 64:22-66:8), but then to 'stay away from me' (DRG 67:8-18).

d.    After she told Karan's attorneys that she intended to speak with me, they asked if she had received "any type of notification that it is going to be a, you know, deposition.," which she denied, saying it was just going to be a "conversation." (DRG 67:22-68:1.)

---

[1] Excerpts of Ms. Grady's Taped Statement are attached hereto as Exhibit A.

DECLARATION OF THORNTON DAVIDSON
IN SUPPORT OF PLAINTIFF'S POSITION RE:
DISCOVERY DISPUTE

3

e.    After learning that I was not proceeding with a formal deposition, Karan's lawyer then stated to Grady, "oh, okay, because we would like to, you know, talk to you." In my opinion that is crystal clear evidence that Holland & Knight knew I was not taking a deposition and was not violating Rule 30-1 – they wanted to conduct the same informal interview themselves, but now feign indignation that the Plaintiff has done so.

f.    Ms. Grady also confirmed that if subpoenaed she would testify identically to her testimony during the taped statement.  (DRG 70:2-5.)

I declare under penalty of perjury according to the law of the United States that the foregoing is true and correct.

DATE: July 16, 2024, at Watsonville, CA

Thornton Davidson

DECLARATION OF THORNTON DAVIDSON
IN SUPPORT OF PLAINTIFF'S POSITION RE:
DISCOVERY DISPUTE

4

# EXHIBIT A

EXAMINATION UNDER OATH OF

RENEE GRADY

MONDAY, MAY 6, 2024

REPORTED BY:

JAMIE ONUKI

CSR NO. 13904

Examination under oath of Renee Grady, taken by Thornton Davidson via remote videoconference, commencing at 2:03 p.m., on Monday, May 6, 2024 before Jamie Onuki, Certified Shorthand Reporter No. 13904.

A P P E A R A N C E S


THORNTON DAVIDSON, P.C.

BY:  THORNTON DAVIDSON, ESQ.

1195 West Shaw Avenue, Suite A

Fresno, California 93711

(559) 476-5064

**RENEE GRADY**

May 06, 2024

I N D E X

WITNESS:  RENEE GRADY

EXAMINATION                                                    PAGE

    BY MR. DAVIDSON                                              4

E X H I B I T S

MARKED                    DESCRIPTION                    PAGE

Exhibit 1     Deposition Subpoena of         39
              Renee Grady

Exhibit 2     Gift Letter                    48

Exhibits A    33-page document               49
through K

**RENEE GRADY**

May 06, 2024

MONDAY, MAY 6, 2024

2:03 P.M.

\* \* \*


RENEE GRADY,

Having first declared under penalty of perjury to tell the truth, was examined and testified as follows:


BY MR. DAVIDSON:

Q    So today you are here to give your very best testimony.  Do you understand that?

**A    I do.**

Q    Okay.  Additionally there is -- there are no other counsel present, and I want to explain the purpose of that.  You are aware that you have been sued by my client, Mahesh Gogri, in a case that is venued in the U.S. District Court for the Northern District of California and it is Case Number, just so I put it on the record, 24-cv-00732-tlt.

You are aware that you have been sued in that matter, correct?

**A    I am.**

Q    Okay.  And that you did not answer the complaint timely, and therefore, your default was taken.  Do you understand that?

**RENEE GRADY**

May 06, 2024

A    I do.

Q    Okay.  And you also understand that there are no other parties that have appeared in the case, which is to say, other people have been served, but no one has filed a responsive pleading.  Do you understand that?

A    No.

Q    Okay.  I will put on the record, Madam Reporter, that the other defendants in this case are Karan, K-A-R-A-N, Gogri, Shilpa Gogri, Renee Grady, of course, and Sanjiv, S-A-N-J-I-V, Patel, P-A-T-E-L.  Those parties -- Shilpa Gogri has been served but has not appeared.  Karan Gogri has an attorney at Holland & Knight, but they have yet to make an appearance.

And Mr. Patel has not made an appearance.  Otherwise, if they had made an appearance, then I would be doing this formally as a deposition.

A    Can I just correct something really quickly?

Q    Of course.

A    I didn't quite -- I didn't understand the question.  But yes, I was aware, based on what I was served, that Mahesh was suing me, his son Karan, and then there was somebody, Patel, on there.  So yes, I was aware of that.

Q    Okay.  I want to make sure the record is clear as to how this came about, how this statement came

**RENEE GRADY**

May 06, 2024

about.  You've got to be careful.  Try not to -- okay.
Thank you.  You called me, correct?

A    I did call you upon your request, if I did not
have a lawyer.

Q    Okay.

A    Yeah, you asked.

Q    I asked you if you had a lawyer, correct?

A    That is correct.

Q    Okay.  And at the time you answered you do not
have a lawyer, correct?

A    That is correct.  That is correct.

Q    And presently you are not represented by
counsel, correct?

A    That is correct.

Q    Okay.  After we spoke -- and I want to say our
conversation was about 10 or 15 minutes -- strike that.
Do you remember essentially the content of our
conversation?

A    Essentially, yes.

Q    Okay.  And was I inquiring of you essentially
what happened relative to your notarization of
signatures for Mahesh and Shilpa and Karan Gogri?

A    Yes.

Q    Okay.  And you told me that you wanted to tell
the truth, and you wanted to basically kind of get it

**RENEE GRADY**

May 06, 2024

off your chest, is that correct?

A    That is correct.

Q    Okay.  And that is why you have agreed to this statement under oath, correct?

A    That is correct.

Q    Okay.  Were you coerced in any way?  Did I -- did I threaten you?  Did I, you know, say that bad things would happen to you legally if you didn't give this statement?

A    You did not.

Q    And so you are here in all respects willingly?

A    Correct.

Q    And do you know that this is being transcribed by a court reporter?

A    Yes.

Q    Okay.  It is also being videotaped.  Do you understand that?

A    Yes.

Q    Okay.  Ms. Grady, where do you reside?  Where do you live?

A    In Castro Valley, California.

Q    Do you mind giving me your address?

A    3560 Jamison Way, Apartment 1, Castro Valley, 94546.

Q    And who do you live there with?

**RENEE GRADY**

May 06, 2024

happened?

A    As far as legal?

Q    Yeah.

A    Because I really thought that it was going to go away because, you know, Shilpa kept saying, "Oh, this is between him and I, you know, you don't have anything to worry about."  But then when you started turning up the heat I was like, oh, no, this is serious.  I've got to talk, just so I can sleep, you know, because I haven't -- this has been bothersome, you know, I haven't never been in this situation before.

Q    Have you ever done this for anybody else?

A    No.

Q    Okay.  Only for Shilpa and Karan?

A    Right.  And it is like, you know, I just could kick myself because they are not even freaking relatives or anything, you know?  So stupid, just stupid on my part.  Sorry.

Q    It is all right.  We all make mistakes.  Did you ever receive any calls from any other law firms --

A    No.

Q    -- other than, you said that Shilpa's lawyers didn't call you?  Did you ever receive any other calls from any other law firms?

A    Only Karan's law firm has called me several

times over the past few months.

Q    And what were the contents of -- well, strike that.  Did you speak with whoever was calling you?

A    I spoke to a David and the other guy's name -- I think his last name was Hernandez or something like that.  I can't think of his -- was it Jose, Joshua?  Anyway, it was his counterpart.

Q    So did Mr. Hernandez call you first and then Jose or whomever, and then David?

A    I think -- I believe David called first but I -- to be honest with you, I got confused with both of them because I thought one was with your office, even though they didn't say this.  It was just in my mind.  I thought one was your office and one was their office and then I -- they were like, "No, no, no.  This is" -- whatever Karan's lawyer's office is.

Q    Holland & Knight?

A    Yes.

Q    Okay.  So people were calling you from Holland & Knight.  What were they asking you or telling you, et cetera?

A    They were just asking me, did I get a -- have I found a lawyer yet.  The exact words are, "Are you still looking for a lawyer?"

Q    Did you tell them --

**RENEE GRADY**

May 06, 2024

A    Yeah, I told them that I was and --

Q    Did they tell you, you should get a lawyer?

A    The other day when David called, he did say that I -- no, they both did.  They said I needed a lawyer for protection.

Q    Protecting yourself, how so?

A    They just said for protection.  That is all they said and --

Q    Did they offer to try to refer you to a lawyer?

A    Not at all.  And I actually asked -- because I had been calling -- like I said, I have never been sued before, so I didn't know what kind of lawyer to get.  And so -- what is his name?  David's counterpart, I remember asking him, I was like, "Well, can you just tell me what type of lawyer," because there are all different types for all different things.  And he said, "No, I can't advise you of that."

Q    Okay.  At some point in time recently you told them that you had talked to me.

A    Yes.

Q    Do you remember what you told them?

A    Yeah.  The counterpart guy, he called -- it was interesting.  He called like a day or two after I talked to you, which was odd to me.  And so he said --

RENEE GRADY

May 06, 2024

oh, because the last time he called, he was asking me a bunch of questions and I said no, I think I need to find a lawyer to -- because he kept saying, "If you get a lawyer, lawyers will talk amongst each other," like basically I don't have to talk, right?

Q    Did they ever ask you about the signatures?

A    Never.

Q    Okay.  So what did you tell them about conversing with me?

A    I said I am -- first I said I have a deposition on Monday with you, and they were -- I think it was the counterpart that said, "Oh, we were trying to keep him out" -- keep you out of the equation basically.

Q    Trying to keep me out?

A    Right.  And I said, "How can you keep him out when he is part of it?"  I just didn't understand, right?  And I can't remember what was said after that but it just -- that confused me.  And so, then -- I can't remember if it was -- I think it was the next day, David called me.  And he says, "I understand that, you know, you are going to have" -- oh, let me back up.

So the counterpart, he said -- I told him I was having a deposition with you.  And he said, "Well, did you get any type of notification that it is going to be a, you know, deposition?"  I was like no, I said,

"Well, let me just say it is a conversation." And so, he is like, "oh, okay, because we would like to, you know, talk to you."

And I think they were trying to talk to me before I talk to you. And my whole thing is like, I want to put this to bed. I don't want all this confusion because I have never been in this situation before, just put it to bed. That is my recollection. So I told him, "Well, call me on Monday," which is today, "at 12:00," but I never answered his call.

He left me a message, and I just never answered because it is like, I'm going to go through this -- you know, I'm going to get through this, so I just never answered the call. And I'm sure that they called again but I just -- I'm not answering.

Q   Did they tell you not to talk to me?

A   Did they tell me not to talk to you -- they told me that -- very sternly, David said, "You need to get a lawyer to be represented" -- yeah, he did tell me that, actually. He said, "Don't go in there without a lawyer." He says, "I can't advise you, but don't go in there without a lawyer."

Q   I'm not asking you to speculate as to his state of mind, but why do you think they were asking you that?

**RENEE GRADY**

May 06, 2024

A    Well, he was saying that you were not looking out for my best interest.  You were only looking out for your client, and me, Karan, and Shilpa are on the same side.

MR. DAVIDSON:  Jamie, did you get that?  She froze up on me.

THE REPORTER:  Yes.  I got it all.

MR. DAVIDSON:  Okay.  Could you read it back?  I didn't hear it.  I'm sorry.  Maybe it is my computer.

THE REPORTER:  That's okay.

(Whereupon, the requested portion of the transcript was read back.)

BY MR. DAVIDSON:

Q    Okay.  You understand I represent Mahesh?

A    I do.

Q    I haven't given you any legal advice, have I?

A    You have not.

Q    Okay.  I haven't -- well, you have given this statement willingly because you want to get this behind you, correct?

A    Absolutely, correct.

Q    And the way that you have decided to do that, as you have said, is the truth will set you free.  So you have decided to set yourself free by telling the truth, correct?

**RENEE GRADY**

May 06, 2024

A    That is correct.

Q    And if you ever were asked to testify at trial or in any forum, civil litigation, you would testify exactly as you have testified here today, correct?

A    That is correct.

Q    Ms. Grady, I can't tell you how much I appreciate you doing that today, what you have done.

A    Thank you.

Q    You knew you had done wrong and you are trying --

A    Trying to make it right.

Q    Trying to make it right, perfectly said.  You are going to get a transcript.  And the court reporter can either e-mail it to you or mail.  What would you prefer?

A    She can e-mail it to me.

Q    Okay.  Could you give the court reporter your e-mail address, please?

A    Sure.  It is Renee, R-E-N-E-E, at -- these are initials, M-Y, hyphen, F as in "Frank," N as in "Nancy, S as in "Sam," dot-com.

Q    She is going to send you that transcript, and you are going to have 30 days in order to -- can you do it in a couple of weeks, 15 days to review it?

A    Yeah.